UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE ESTATE OF LOUIS D. HAEUSER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5631** |
| **WESTCHESTER SURPLUS LINES INSURANCE COMPANY** | **SECTION "C" (3)** |

**ORDER**

On February 25, 2015, the Motion for Protective Order [Doc. #88] came on for oral hearing before the undersigned. Present were Robert Murphy on behalf of plaintiffs and Leah Engelhardt on behalf of defendant. After the oral hearing, the Court took the motion under advisement and allowed defendant to file a supplemental affidavit on February 27, 2015. Having reviewed the motion, the opposition, the reply, and the case law, the Court rules as follows.

**I.   Background**

The complaint alleges as follows. Plaintiffs herein, The Estate of Louis D. Haeuser and The Estate of Lucille S. Haeuser d/b/a Louis D. Haeuser Investment Account; Louis D. Haeuser Deckbar Account, L.L.C., Albert Mintz Deckbar Account, L.L.C., Estate of Richard B. Montgomery, Jr. Deckbar Account, L.L.C. d/b/a Haeuser, Montgomery, Mintz d/b/a Deckbar Company; and The Estate of Louis D. Haeuser, The Estate of Lucille S. Haeuser, Daniel L. Haeuser, and Lucille Haeuser-Brian d/b/a Haeuser Realty ("Plaintiffs"), filed this breach-of-contract and bad-faith

insurance claim against their insurer, Westchester Surplus Lines Insurance Company ("defendant"), in order to recover insurance proceeds due as a result of property damage to multiple properties owned by plaintiffs caused by Hurricane Isaac on August 28, 2012.

Plaintiffs maintain that the cost to repair the damage to their properties caused by Hurricane Isaac totals over $1,000,000. Plaintiffs further allege that Westchester grossly undervalued the full extent of plaintiffs' replacement-cost covered losses and damages and has to date only agreed to pay plaintiffs an aggregate of $208,848.35. Plaintiffs contend that Westchester misrepresented its policy provisions by adamantly and repeatedly, but incorrectly, maintaining to plaintiffs that the $100,000 minimum per occurrence windstorm deductible applied separately ("per location") to each of plaintiffs' scheduled properties damaged by Hurricane Isaac. Plaintiffs also allege that Westchester delayed in paying undisputed covered losses. Plaintiffs seek penalties and attorneys' fees because Westchester breached its duty to properly adjust this insurance claim by misrepresenting its policy provisions, by purposefully minimizing the scope and extent of the physical damage to the properties caused by Hurricane Isaac, and by failing to pay the amount of the claim within 60 days of receipt of satisfactory proof of loss.

## II.     The Parties' Contentions

### A.     The Motion for Protective Order

On February 16, 2015, plaintiffs served a Rule 30(b)(6) Notice of Deposition on defendant, unilaterally setting the deposition on February 19, 2015. Plaintiffs had served defendant with a draft of the notice on December 10, 2014. Defendant objected to several areas of discovery but tentatively identified February 19, 2015 as a possible date. Defendant never heard from plaintiffs.

On February 16, 2015, defendant contacted plaintiffs, assuming that the deposition would not occur. Plaintiffs immediately responded and issued the notice of deposition, identical to the draft notice.

Citing Rule 30, defendant contends that three days is not a "reasonable" time to respond to a subpoena. Citing case law, defendant notes that this Court has held that four days is clearly unreasonable.

Defendant also renews its objections to the areas of inquiry that this Court has already ruled irrelevant. For example, Topic No. 1 asks for a corporate representative to testify as to the underwriting files from July 1, 2010 through July 1, 2013. This Court has already held this time frame overbroad. Without specifics, defendant also contends that many topics are so overbroad that it can not identify a corporate representative to testify to them.

### B.   Plaintiffs' Opposition

The parties have agreed to a revised scope of the Rule 30(b)(6) deposition notice, and defendant has agreed to designate a corporate representative. The only issue still in dispute are Topic Nos. 18-23. These topics seek to discuss defendant's relationship with several corporations and individuals who it has hired in the past to investigate claims. Defendant included Richard Haggis on its witness list and listed Patrick Heil, David Schifani, and Terry Wolfe as expert witnesses.

Citing case law, plaintiffs contend that evidence between a witness and a party is discoverable to demonstrate the possible bias of the witness. Plaintiffs maintain that the number of claims assigned to the individuals and the income derived from those assignments is relevant to demonstrate the potential bias of the parties.

**III.     Law and Analysis**

The Court finds that the case law supports plaintiffs' arguments. Evidence of a special relationship between an expert witness and legal counsel is relevant to demonstrate the possible bias of the expert witness, and discovery that is reasonably calculated to lead to such evidence should be permitted. *See Butler v. Rigsby*, No. Civ. A. 96-2453, 1998 WL 164857, *2 (E.D. La. Apr. 7, 1998) (and cases cited therein); *Wacker v. Gehl Co.*, 157 F.R.D. 58, 59 (W.D. Mo. 1994) (denying discovery request but explaining that it would be permitted if party had presented factual information suggesting "a special relationship" or "any other theory of bias or lack of objectivity"); *cf. Trower v. Jones*, 520 N.E.2d 297, 301-02 (Ill. 1988) (allowing counsel to inquire on cross-examination as to frequency with which witness testified for plaintiffs). Similarly, an expert witness' experiences in prior lawsuits is relevant to demonstrate possible biases. *See First State Bank v. Deere & Co.*, Civ. A. No. 86-2308, 1991 WL 46375, at *7 (D. Kan. Mar. 15, 1991) (allowing inquiry into past experiences as expert witness was proper subject matter for questioning at deposition); *Bottorff v. Bethlehem Steel Corp.*, 130 F.R.D. 97, 98 (N.D. Ind. 1990) (holding that witness' prior experience as consulting expert was relevant to both his qualifications and potential bias); *Bockweg v.. Anderson*, 117 F.R.D. 563, 565-66 (M.D.N.C. 1987) (allowing expert witnesses to be questioned concerning their involvement, past or present, in other malpractice actions).

However, this type of discovery is not unlimited. The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending-or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or

attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c).

Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

The Court finds that defendant has met this burden here, especially given the fast-approaching trial deadline. Accordingly, the Court shall limit this expert discovery to all cases in which the designated expert testified as an expert at trial or at a deposition in the previous four years. Fed. R. Civ. P. 26(a)(2)(B)(v).

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Protective Order [Doc. #88] is GRANTED IN PART and DENIED IN PART as outlined above.

New Orleans, Louisiana, this 9th day of March, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**